UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WSC-L LAKESIDE INVESTORS V, LLC,

    Plaintiff,

v.                               Case No.: 8:08-cv-1694-17TBM

PULTE HOMES CORPORATION and
PULTE HOMES, INC.,

    Defendants.
_____/

**ORDER ON PLAINTIFF'S MOTION *IN LIMINE*, MOTION TO STRIKE, AND**

**MOTIONS FOR SUMMARY JUDGMENT**

This cause came before this Court pursuant to a Motion *In Limine* and Motion to Strike filed by WSC-L Lakeside Investors V, LLC (WSC-L) (Doc. 66), as well as a response (Doc. 67). These motions were filed by WSC-L after both WSC-L and Pulte Home Corporation (Pulte) and Pulte Homes, Inc. ("Pulte Parent") (collectively "Pulte Parties" or "Defendants") filed motions for Summary Judgment. A review of the record indicates that for the following reasons, the Motion *In Limine* and the Motion to Strike shall be **DENIED** and the Motions for Summary Judgment shall be **DENIED**. The following facts are adopted only for purposes of resolving pending motions.

**BACKGROUND**

In Spring 2007, a principal of WSC-L, began contacting the Pulte Companies concerning Plaintiff's desire to purchase a tract of land (the "Subject Property") in Pasco County, Florida containing approximately 760 lots. WSC-L is a joint venture formed by a Tampa-based land developer, Landeavor LLC, and a Chicago real estate investment firm, Walton Street Capital

1

LLC. Pulte Parent is a Michigan corporation with its principal place of business in Michigan. The subsidiaries of Pulte Parent conduct business in the homebuilding and financial services industries. Pulte is a Michigan corporation with its principal place of business in Michigan and engages in homebuilding services in Florida. The Subject Property is part of a residential community commonly known as the Lakeside Community. The Lakeside Community was divided into three developmental phases, Phase I containing 407 lots and Phases II and III containing a combined 445 lots.

On December 21, 2007 WSC-L sent a letter to the Defendants expressing its interest in purchasing the Subject Property. A representative of the Defendants accepted and agreed to WSC-L's letter of intent to purchase on December 24, 2007. On or about December 31, 2007, Pulte and WSC-L formally executed the Purchase Agreement, whereby WSC-L agreed to purchase and Pulte agreed to sell the Subject Property. Also occurring on this date, Pulte Parent executed the Guarantee of Pulte Parent (the "Guarantee"). Pursuant to the Guarantee, Pulte Parent guaranteed "payment of all amounts due and/or performance of all obligations of [Pulte] that arise after Closing, regardless of whether or not such obligations relate to matters that occurred before or after Closing."

The Purchase Agreement contained a "General Disclaimer" through which Pulte represented that the Subject Property was being sold on an as is basis. Section 4.2 of the Purchase Agreement also set forth that WSC-L had a duty to conduct due diligence examinations on the property. Due to the short period of time in which this contract was entered into, the Purchase Agreement also contained 25 warranties and representations relied upon by WSC-L which survived the closing for six months.

Included in the Purchase Agreement, the Defendants did state the monetary amount of impact fee credits that had been paid to that date. Section 7.12(n) of the Purchase Agreement specifically states that:

> Seller has paid to Pasco County the Impact Fee Credits, which constitute all Pasco County requisite prepaid impact fees in connection with such Utilities Service Agreement in order to secure capacity for all of the units within Phase I of the Property pursuant to the Utilities Service Agreement. The Impact Fee Credits are currently held in an account with Pasco County, which account initially contained $418,396 and which contains $227,188 as of the date hereof. The Impact Fee Credits are assignable by Seller to Buyer as the sole beneficiary thereof.

In §1.2 of the Purchase Agreement, impact fee credits had been defined as:

> ...those certain impact fee credits currently held in an account with Pasco County, which credits could be applied against impact fees payable to the appropriate governmental authorities in connection with the development and construction of improvements on the Property.

On January 9, 2008 Pasco County mailed to the Defendants a letter advising them that the "final 50% payment of the service commitment fees" for the Subject Property were due on or before February 29, 2008. The amount due was $418,396 that needed to be paid to satisfy the remaining fifty percent. The Defendants subsequently forwarded this information on to WSC-L. WSC-L timely paid the amount owed to mitigate any damage that may result from failure to pay. Subsequently, WSC-L informed the Defendants of its intent to bring suit pursuant to the Purchase Agreement.

On or about August 28, 2008, WSC-L filed a complaint against the Defendants containing five counts. In November of 2008 WSC-L, amended its complaint, reasserting the same claims against the Defendants. On January 13, 2009 the parties stipulated to dismiss with prejudice Counts IV and V of the Amended Complaint. Further, on April 22, 2009, this Court entered an Order dismissing Count II of the Amended Complaint. The two remaining counts are Count I against Pulte for breach of contract and Count III against Pulte Parent for breach of

guarantee. Both WSC-L and the Defendants subsequently filed a Motion for Summary Judgment on the remaining Counts. On November 9, 2009, WSC-L filed the instant Motion *In Limine* and Motion to Strike.

## DISCUSSION

WSC-L argues that, absent any ambiguity, the intent of the parties should be determined from the contract itself, without resort to extrinsic evidence. WSC-L also notes that any extrinsic evidence they have placed before the Court in their pending summary judgment motion or their opposition to motion for summary judgment filed by Defendants would also then be inadmissible if the Court were to grant the present motions. Alternatively, they also argue that if the Court determined that there was a latent ambiguity in the contract then this would be a material issue of fact that would preclude summary judgment. Defendants argue that the Court is to consider all of the "surrounding circumstances" concerning the Purchase Agreement; only evidence of prior negotiations should be excluded from consideration. The Defendants further argue that even if the Court is to find an ambiguity, WSC-L has confused the distinction between patent ambiguities and latent ambiguities.

When interpreting a contract, the court must first examine the plain language of the contract for evidence of the parties' intent. Royal Oaks Landing Homeowner's Ass'n Inc. v. Pelletier, 620 So.2d 786, 788 (Fla. 4th DCA 1993). Absent some ambiguity, the intent of the parties to a written contract must be ascertained from the words used in the contract, without resort to extrinsic evidence. Wheeler v. Wheeler, Erwin & Fountain, P.A., 964 So.2d 745, 749 (Fla. 1st DCA 2007). It is also generally accepted that the language of a contract cannot be properly understood if it is read without attention to the circumstances surrounding the creation of the contract. Fla. E. Coast Ry. Co. v. CSX Transp., 42 F.3d 1125, 1129 (7th Cir. 1994)

(applying Florida law). In the instant case, the surrounding circumstances show that each party acted to close this sale of the Subject Property in a very short period of time. If this Court finds that the Purchase Agreement is unambiguous, then the intent of the parties must be determined from an examination of the Purchase Agreement and the circumstances surrounding its formation. However, the Purchase Agreement is not unambiguous.

Whether an ambiguity exists is a question of law. Wheeler, 964 So.2d 745, 749 (Fla. 1st DCA 2007). There are two types of ambiguities that a document may contain. These are patent and latent ambiguities. A patent ambiguity is one that is appears on the face of the contract and arises from the use of defective, obscure, or insensible language. Emergency Associates of Tampa, P.A. v. Sassano, D.O., 664 So.2d 1000, 1002 (Fla. 2nd DCA 1995) *citing* Ace Elec. Supply Co. v. Terran Nova Elec., Inc., 288 So.2d 544 (Fla. 1st DCA 1973). A latent ambiguity arises when a contract on its face appears clear and unambiguous but it fails to specify the rights or duties of the parties in certain situations. Wheeler, 964 So.2d 745, 749-750 (Fla. 1st DCA 2007). A latent ambiguity has similarly been defined as "an ambiguity that does not readily appear in the language of a document, but instead arises from a collateral matter when the document's terms are applied or executed." Black's Law Dictionary (8th ed. 2004). The Purchase Agreement entered into between WSC-L and the Defendants contains a latent ambiguity.

In the instant case there is a latent ambiguity in the statement in §7.12(n) of the Purchase Agreement where it says that the Pulte Parties have paid " to Pasco County the Impact Fee Credits, which constitute all Pasco County requisite prepaid impact fees…" On its face, this statement appears to be unambiguous. However, in its application, the statement can be interpreted two ways. It can be interpreted, as Pulte Parties contend, that all prepaid impact fees

5

owing on the date of the Purchase Agreement have been paid; however, any future amounts would be the responsibility of the purchaser, WSC-L. The statement can also be interpreted, as it is by WSC-L, to mean that any and all impact fee credits on this property have been paid by the Pulte Parties and that there is nothing further, by way of impact fee credits, that will ever have to be paid as it relates to the Subject Property.

If a latent ambiguity exists, extrinsic evidence is admissible regarding the intent of the parties to a contract. Wheeler, 964 So.2d 745, 749 (Fla 1st DCA 2007). However, because the latent ambiguity requires resolution by resort to extrinsic evidence, a question of fact is presented. Id. When a latent ambiguity exists, a question of material fact is presented; thus, the issue of the correct interpretation of the agreement is an issue of fact which precludes summary judgment." Mac-Gray Services, Inc. v. Savannah Associates of Sarasota, LLC, 915 So.2d 657 (Fla 2d DCA 2005). Therefore, the Motion *In Limine* and Motion to Strike shall be denied because there is a latent ambiguity in the Purchase Agreement. To determine the intent of the parties when a latent ambiguity exists in the document extrinsic evidence must be admitted. However, the existence of a latent ambiguity also creates a material issue of fact that precludes the entry of Summary Judgment. Accordingly it is,

**ORDERED** that the Plaintiff's Motion *In Limine* and Motion to Strike is **DENIED**, Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law is **DENIED**, and WSC-L Lakeside Investors V, LLC's Motion for Final Summary Judgment is **DENIED**. The Court will set this case for trial with all expediency.

**DONE and ORDERED** in Chambers, in Tampa, Florida this 22nd day of April 2010.

ELIZABETH A. KOVACHEVICH
United States District Judge

Cc: All Parties and Counsel of Record